IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WEBSTER BANK, NATIONAL ASSOCIATION,<br><br>        Plaintiff<br><br>v.<br><br>IVAR RANVIK<br><br>        Defendant. | FILED: APRIL 2, 2008<br>08CV1891    PH<br>JUDGE MANNING<br>MAGISTRATE JUDGE COX |

## COMPLAINT

Plaintiff, Webster Bank, National Association, by and through its attorneys, hereby complains against Ivar Ranvik for breach of contract and in support states the following:

## JURISDICTION

1. This Court has subject matter jurisdiction over this subject matter under 28 U.S.C. §1332 and 28 U.S.C. § 1348. This is a civil action between citizens of different states. The amount in controversy in this action exceeds $75,000.00, exclusive of costs and interest.

2. Venue is properly before this Court pursuant to 28 U.S.C. §1391(a)(1) and (a)(3) because Defendant Ivar Ranvik ("Ranvik") resides within the district and is subject to personal jurisdiction here.

## THE PARTIES

3. Plaintiff, Webster Bank, National Association ("Webster"), is a national banking association with its principal place of business located in Waterbury, Connecticut.

4. Defendant Ranvik is a resident of DuPage County, Illinois.

## THE FACTS

5. On October 5, 2006, Webster and Ranvik entered into a loan agreement evidenced by a written promissory note. (10/5/06 promissory note "Note" attached hereto as Exhibit A).

6. Under the terms of the Note, Webster agreed to loan Ranvik the principal amount of $591,500.00 at a yearly interest rate of 9.00%. Ex. A, Note, ¶ 2. The loan was for the purpose of construction on the property located at 3129 N. Oketo Ave., Chicago, IL, 60707 and Webster funded the loan pursuant to the agreement.

7. Pursuant to the Note, on December 1, 2006, Ranvik was to begin making monthly payments of $4,789.23. These payments were to continue until Ranvik had "paid all of the principal and interest and any other charges described below that [Ranvik] may owe under [the] Note." Ex. A, Note, ¶ 3.

8. The Note also contained a "Maturity Date" of November 1, 2036, on which Ranvik agreed to pay in full any remaining amounts due under the Note. Ex. A, Note, ¶ 3.

9. Ranvik made the scheduled payments through November 2007. However, on December 1, 2007, Ranvik failed to make the scheduled payment, and thereafter has not made a single payment to Webster.

10. The Note provides that if Webster "has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, [Ranvik] will pay a late charge," of "5.000 % of [the] overdue payment of principal and interest." Ex. A, Note, ¶ 6(A).

11. The Note provides that if a payment is not made on the date it is due, Ranvik will be in default. Ex. A, Note, ¶ 6(B).

12. Therefore, Ranvik is currently in default.

13. On January 29, 2008, pursuant to the terms of the note, Webster sent Ranvik a notice of default, and now deems the full amount of principal and interest due. Ex. A, Note, ¶ 6(c).

## **COUNT ONE – Breach of Contract**

14. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 13 above as if fully set forth herein.

15. Webster offered to loan Ranvik the sum of $591,500.00 on the terms described in the Note.

16. Ranvik accepted the terms of the Note.

17. The consideration for the contract consisted of Webster's payment of the principal and Ranvik's agreement to repay the loan with interest.

18. The parties memorialized their agreement on October 5, 2006 by executing the Note, thus creating a valid and enforceable contract.

19. By funding the loan, Webster fully performed.

20. Ranvik began performance by making monthly interest payments.

21. On December 1, 2007, Ranvik stopped making monthly payments, is now in default and thereby breached the contract.

22. Pursuant to the terms of the Note, Webster deems the entire sum of principal and interest due and payable.

23. The terms of the Note provided that Ranvik agreed to pay any expenses Webster incurred in enforcing the provisions of the Note, including attorney's fees. Ex. A, Note, ¶ 6(E).

24. As of the date of filing, the amount of principal, interest, and expenses due on the Note exceeded $588,890.02.

**WHEREFORE**, plaintiff Webster Bank respectfully requests that this Court enter judgment in Webster's favor and against Ranvik on the Note in an amount to be proved at trial including interest at the default rate, attorney's fees, costs, expenses believed to be in excess of $588,890.02 and order any other relief the Court deems equitable and just under the circumstances.

Dated: April 2, 2008

Daniel Lynch (Ill. Bar No. 6202499)
Lynch & Stern LLP
150 S. Wacker Dr., Suite 2600
Chicago, IL  60606
(312) 346-8700 / (312) 896-5883 (fax)

Respectfully submitted,
Webster Bank, National Association,

 s// *Daniel Lynch* (filed electronically)
By: One of Its Attorneys

# Exhibit A – Note

# NOTE

October 5, 2006               Schaumburg                    IL
Date                              City                          State

3129 North Oketo Avenue, Chicago, IL 60707
(Property Address)

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 591,500.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Webster Bank, National Association**. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 9.000 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on December 1, 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on November 1, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
Webster Plaza, 145 Bank Street, Waterbury, CT 06702
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 4,789.23.

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac Uniform Instrument   Form 3200 1/01
Page 1 of 3                                       4704182505                                      Initials:

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED

#### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

#### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

#### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

#### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

#### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 7. GIVING OF NOTICES.

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property, or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac Uniform Instrument   Form 3200 1/01
Page 2 of 3                                              4704182505                             Initials: ____

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
IVAR RANVIK                              -(Borrower)

_____ (Seal)
                                         -(Borrower)

_____ (Seal)
                                         -(Borrower)

_____ (Seal)
                                         -(Borrower)

*(Sign Original Only)*

MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac Uniform Instrument   Form 3200  1/01
Page 3 of 3                          4704182505                                          Initials: _____